UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF GEORGE WATTS, JR.,<br><br>       Plaintiff,<br><br>  v.<br><br>LLOYD J. AUSTIN III in his official capacity as Secretary of the United States Department of Defense,<br><br>       Defendant. | Civil Action No. 1:23-cv-01544 (CJN) |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.        Sovereign Immunity Bars Plaintiff's Claim. ........................................................... 2

    II.       The Lack of Any Relevant Enforcement Action Means that Plaintiff Fails to State a Claim Under the PREP Act. ......................................................................... 4

    III.      Plaintiff Does Not Plead "Willful Misconduct" with Particularity. ....................... 6

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Allen v. United States*,
    572 F. Supp. 3d 411 (E.D. Mich. 2021),
    *reconsideration denied*, 606 F. Supp. 3d 539 (E.D. Mich. 2022) .............................................. 3

*Alliance of Descendants of Texas Land Grants v. United States*,
    37 F.3d 1478 (Fed. Cir. 1994) ................................................................................................... 4

*Bega v. Jaddou*,
    No. 22-02171 (BAH), 2022 WL 17403123 (D.D.C. Dec. 2, 2022) ..................................... 9, 12

*\*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 8, 9

*Da Costa v. Immigr. Inv. Program Off.*,
    No. 22-5313, 2023 WL 5313526 (D.C. Cir. Aug. 18, 2023) .................................................... 9

*Denis v. Ige*,
    538 F. Supp. 3d 1063 (D. Haw. 2021) ................................................................................... 13

*Doe # 1 v. Rumsfeld*,
    297 F. Supp. 2d 119 (D.D.C. 2003) ......................................................................................... 7

*Doe v. Austin*,
    572 F. Supp. 3d 1224 (N.D. Fla. Nov. 12, 2021) .............................................................. 10, 11

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
    438 U.S. 59 (1978) ................................................................................................................... 3

*In re Domestic Airline Travel Antitrust Litig.*,
    221 F. Supp. 3d 46 (D.D.C. 2016) ......................................................................................... 12

*In re Hillman*,
    No. 22-10175, 2023 WL 3804195 (Bankr. N.D.N.Y. June 2, 2023) ........................................ 5

*In re Offer Space, LLC*,
    629 B.R. 299 (Bankr. Utah 2021) ............................................................................................ 5

*In re Thurmon*,
    625 B.R. 417 (Bankr. W.D. Mo. 2020) .................................................................................... 5

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ................................................................................................. 6

*Lloyd v. Sch. Bd. Of Palm Beach Cnty.*,
  570 F. Supp. 3d 1165 (S.D. Fl. 2021) ................................................................................. 12

*Sharkey v. United States*,
  17 Cl. Ct. 643 (1989) ............................................................................................................ 3

*Simpson v. Fed. Bureau of Prisons*,
  No. 1:19-CV-03173 (CJN), 2020 WL 95814 (D.D.C. Jan. 8, 2020) ........................................ 2

*Stanko v. Oglala Sioux Tribe*,
  916 F.3d 694 (8th Cir. 2019) ................................................................................................ 3

*United States v. Generix Drug Corp.*,
  460 U.S. 453 (1983) ...................................................................................................... 11, 12

*United States v. Stanley*,
  483 U.S. 669 (1987) .............................................................................................................. 7

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
  768 F. Supp. 2d 117 (D.D.C. 2011) ................................................................................... 12

**Statutes**

10 U.S.C. § 1107a(a)(1) .............................................................................................................. 10

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) ....................................................................................... 10

*42 U.S.C. § 247d-6d ........................................................................................................ *passim*

**Other Authorities**

E. Chemerinsky, *Against Sovereign Immunity*,
  53 Stan. L. Rev. 1201 (2001) ................................................................................................ 2

*Engaged In*, Merriam-Webster.com,
  https://www.merriam-webster.com/dictionary/engaged%20in (last visited Sept. 21, 2023) ..... 5

Gargano et al., *Use of mRNA COVID-19 Vaccine After Reports of Myocarditis Among Vaccine Recipients: Update from the Advisory Committee on Immunization Practices — United States, June 2021*, 70 Morbidity & Mortality Wkly. Rep. 977, 979 (July 9, 2021),
  https://perma.cc/49YJ-2UAHE ........................................................................................... 9

*United States v. Brandt*, 2 Nuremberg Trials (1949) ..................................................................... 7

## INTRODUCTION

Plaintiff's Opposition to Defendant's Motion to Dismiss, ECF No. 14 ("Opp'n"), confirms that the Court should grant Defendant's motion, ECF No. 13. Plaintiff's claim is clearly barred by sovereign immunity, as the PREP Act itself states that it shall not "be construed to . . . waive sovereign immunity," 42 U.S.C. § 247d-6d(f), and Plaintiff has failed to identify any other applicable waiver. Plaintiff's novel claims that sovereign immunity is unconstitutional, generally and in the context of the PREP Act, find no support in caselaw or centuries of historical practice.

Plaintiff fares no better on the merits of its "willful misconduct" claim. Plaintiff cannot recover against the DoD[1] for its alleged acts in connection with the distribution of the EUA vaccine without first establishing that an enforcement action has been undertaken with respect to such acts. *See id.* § 247d-6d(c)(5)(A). Plaintiff does not dispute that no enforcement action has been initiated. Opp'n at 15-16, 19. But even if Plaintiff could do so, its opposition merely reiterates the complaint's conclusory allegations as to DoD's purported "willful misconduct," which fall far short of the particularized pleading the PREP Act demands. *See* 42 U.S.C. § 247d-6d(e)(3). Indeed, Plaintiff largely fails to engage with the FDA statements and CDC guidance regarding the EUA vaccine, which demonstrate that DoD's alleged actions were not unjustified. *See* Mot. at 15. Instead, it asks this Court to infer DoD's "willful misconduct" from decades-old and irrelevant case law related to military vaccine requirements, military drug testing, and war crime tribunals for human experimentation conducted by Nazis during WWII.

Accordingly, this Court should dismiss Plaintiff's "willful misconduct" claim with prejudice.

---

[1] Defendant adopts the same abbreviations and definitions as used in the Memorandum in Support of Motion to Dismiss, ECF No. 13-1 ("Mot.").

## ARGUMENT

### I. Sovereign Immunity Bars Plaintiff's Claim.

Defendant explained in the opening brief that, under governing, long-standing precedent, "sovereign immunity bars suits for money damages against officials in their official capacity absent a specific waiver by the government." Mot. at 7 (quoting *Simpson v. Fed. Bureau of Prisons*, No. 1:19-CV-03173 (CJN), 2020 WL 95814, at *3 (D.D.C. Jan. 8, 2020)). Plaintiff's brief in opposition does not identify any applicable waiver of sovereign immunity. On that basis alone, this case should be dismissed.

Plaintiff's opposition brief starts with an erroneous premise—that the PREP Act is the source of sovereign immunity at issue in this case. Opp'n at 5-6. But sovereign immunity was not established by the PREP Act, but rather has been an inherent attribute of the federal government since the founding of the Republic. *See* Mot. at 8-9. The only way that Plaintiff can overcome sovereign immunity is by identifying an explicit waiver. But it cannot do so: the only provision of the PREP Act that mentions sovereign immunity at all explicitly states that the Act does *not* waive it. 42 U.S.C. § 247d-6d(f). That provision is not the source of sovereign immunity but rather confirms how the Court should interpret the PREP Act against the backdrop of pre-existing sovereign immunity. The bottom line is that even if the Court ignores or severs 42 U.S.C. § 247d-6d(f) as Plaintiffs urge, that would not change the outcome here because Plaintiff still has not identified an applicable waiver, and without one, sovereign immunity bars this suit.

Plaintiff's arguments as to why sovereign immunity is unconstitutional are unavailing. First, Plaintiff claims that sovereign immunity itself is unconstitutional. Plaintiff cites no case that has ever held that sovereign immunity is unconstitutional. Instead, Plaintiff cites to a 2001 law review article titled "Against Sovereign Immunity." Opp'n at 7, n.3 (citing E. Chemerinsky, *Against Sovereign Immunity*, 53 Stan. L. Rev. 1201 (2001)). Plaintiff does not identify a single

2

case where any court has adopted that law review article's position that federal sovereign immunity is unconstitutional—indeed, courts that have considered that article have rejected the position that Plaintiff advances here. In *Stanko v. Oglala Sioux Tribe*, for example, after a party urged the court to find sovereign immunity unconstitutional, citing the article "Against Sovereign Immunity," the court concluded that "it is too late in the day, and certainly beyond the competence of this court, to take issue with a doctrine so well-established" as sovereign immunity. 916 F.3d 694, 697 (8th Cir. 2019)); *see also Allen v. United States*, 572 F. Supp. 3d 411, 418 n.9 (E.D. Mich. 2021) (rejecting constitutional challenge to sovereign immunity relying on "Against Sovereign Immunity"), *reconsideration denied,* 606 F. Supp. 3d 539 (E.D. Mich. 2022).

Plaintiff's next argument—that Congress violated due process by "extinguishi[ng] and replac[ing] federal and state statutory and common law injury claims [with] an administrative compensation program"—misunderstands the fundamental nature of sovereign immunity, advances a claim not raised in the complaint, and misreads the cited case law. Opp'n at 8 (citing *Duke Power Co. v. Carolina Envtl. Study Grp.*, *Inc.*, 438 U.S. 59, 93 (1978)). Since sovereign immunity has not been waived, there was no claim for Congress to "extinguish" by enacting the PREP Act. *See* Mot. at 9 (citing *Sharkey v. United States*, 17 Cl. Ct. 643, 648 (1989)). Plaintiff's legal argument also misreads *Duke Power*. Plaintiff argues that case held that the Due Process Clause requires "an administrative compensation program" to "provide[] reasonable, prompt, and equitable mechanism for compensating victims." Opp'n at 8. But the Supreme Court in *Duke Power* did not so hold. Instead, the Court explained that "it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power Co.*, 438 U.S. at 88.

3

Finally, Plaintiff argues that "Sovereign Immunity [o]ffends the Takings Clause of the 5th Amendment." Opp'n at 9. In support of that argument, Plaintiff cites to a single case—*Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478 (Fed. Cir. 1994). Defendant already explained why sovereign immunity does not create a taking, citing many cases in support. *See* Mot. at 9-12. Plaintiff's opposition makes no effort to rebut or distinguish the cases cited in Defendant's motion to dismiss. Defendant also distinguished *Texas Land Grants* because that case "involved a cause of action related to real property," which is not the case here. *Id.* at 10 n.7. Plaintiff did not respond to that argument.

Plaintiff's entire case is barred by sovereign immunity, and because Plaintiff still has not identified an applicable waiver, the case should be dismissed with prejudice.

## II. The Lack of Any Relevant Enforcement Action Means that Plaintiff Fails to State a Claim Under the PREP Act.

Plaintiff fails to state a viable claim because there has been no enforcement action against the Secretary of Defense or any manufacturer or distributor of the COVID-19 vaccine at issue in this case, and under the PREP Act, such enforcement is required for a claim of willful misconduct. *See* 42 U.S.C. § 247d-6d(c)(5)(A)(i) (an "act or omission by a manufacturer or distributor . . . shall not constitute 'willful misconduct'" where "neither the Secretary [of HHS] nor the Attorney General has initiated an enforcement action with respect to such act or omission"). Plaintiff argues that the PREP Act's enforcement prerequisite is inapplicable because the complaint does not allege that DoD was a manufacturer or distributor of the COVID-19 vaccines. *See* Opp'n at 15-16. True, Plaintiff's complaint goes to great pains to claim that DoD "did not manufacture or distribute" the EUA vaccine to escape this precondition to suit, instead vaguely claiming that DoD "*directed* supply, production and distribution." Compl. ¶¶ 4, 17, ECF No. 1 (emphasis added); *see also*, *e.g.*, *id.* ¶ 8 ("DOD oversaw production and directed distribution"); *id.* ¶ 19 (DoD served as "director

4

of supply, production, and distribution"); *id.* ¶ 78 ("DOD[] direct[ed] the exclusive distribution of. . . [the] EUA vaccine"). But Plaintiff's attempt to qualify DoD's role for purposes of escaping the enforcement prerequisite is fundamentally incompatible with its allegations and theory of liability in this case.

The PREP Act defines a "distributor" to include an "entity engaged in the distribution of . . . biologics." 42 USC § 247d-6d(i)(3). "The plain meaning of 'engaged in' means to be actively and currently involved." *In re Hillman*, No. 22-10175, 2023 WL 3804195, at *3 (Bankr. N.D.N.Y. June 2, 2023) (quoting *In re Offer Space, LLC*, 629 B.R. 299, 305-06 (Bankr. Utah 2021); *In re Thurmon*, 625 B.R. 417, 422 (Bankr. W.D. Mo. 2020)) (interpreting term in context of bankruptcy statute); *see also* Webster's English Dictionary[2] (defining "engaged in" as "to do (something)"). According to the complaint, as "director of [vaccine]. . . distribution," DoD "implemented and oversaw acquisition of supplies and vaccines, including having DOD officials embedded in vaccine production factories to assist with supply chain management and development of a federal governmental plan to distribute these items to the jurisdictions and other federal agencies," and "developed . . . a security plan to support production and distribution of vaccines and supplies from the development phase to distribution." Compl. ¶ 19. Based on these allegations, DoD was "actively and currently involved," *In re Hillman*, 2023 WL 3804195, at *3, in the distribution of the vaccines at the time of the alleged acts. Further, Plaintiff alleges DoD engaged in "willful misconduct" by "never initiat[ing] distribution of Comirnaty" and instead "directing the exclusive distribution" of the EUA vaccine. Compl. ¶¶ 75, 78; *see also id.* ¶ 76 (alleging DoD "intentionally allowed only the existing EUA Pfizer-BioNTech vaccine stock to remain in distribution"); *id.* ¶ 77

---

[2] *Engaged In*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/engaged%20in (last visited Sept. 21, 2023).

(alleging DOD "exclusively allow[ed] distribution of" the EUA vaccine); *id.* ¶ 96 (alleging "DoD left in distribution" the EUA vaccine). This alleged conduct similarly establishes that DoD "d[id] (something)," *supra* n.2, in connection with "the distribution of . . . . biologics," 42 USC § 247d-6d(i)(3); namely, DoD purportedly caused exclusive distribution of the EUA vaccine after Comirnaty was approved. Plaintiff cannot coherently claim that DoD did not engage in distribution for purposes of the enforcement prerequisite but did do so for purposes of liability.

### III.   Plaintiff Does Not Plead "Willful Misconduct" with Particularity.

In opposition, Plaintiff largely rehashes the conclusory allegations of "willful misconduct" contained in the complaint. Fundamental to Plaintiff's argument are two claims: that DoD intentionally sought to engage in mass experimentation and that DoD disregarded the distinction between EUA authorization and BLA approval. These allegations lack any factual support and thus do not, and cannot, establish "willful misconduct" with particularity. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (at motion to dismiss stage, "court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." (citation omitted)).

*First*, Plaintiff repeatedly asserts that DoD intentionally "hornswoggle[d] Americans into" a "nationwide, non-consensual, mass-human experimentation," Opp'n at 3, 17, which purportedly establishes that DoD acted without justification, *id.* at 19, 24, with a wrongful purpose, *id.* at 20, and in disregard of a "known, obvious and highly probable risk that the harm created by non-consensual human experimentation would outweigh any benefit," *id.* at 17. But Plaintiff pleads no facts to support its claim that DoD sought to turn the American public into "guinea pigs" for the COVID-19 vaccines, *id.* at 26. Instead, Plaintiff asks the court to infer that DoD has a "Penchant for Human Experimentation," *id.* at 17, based on decades-old cases related to the military. *See id.*

6

at 24-25 (asserting DoD has a "history and proclivity for human experimentation" and citing *Doe # 1 v. Rumsfeld*, 297 F. Supp. 2d 119, 122 (D.D.C. 2003) (addressing DoD's 1998 anthrax vaccination mandate for members of armed forces and DoD contract employees); *United States v. Stanley*, 483 U.S. 669, 671 (1987) (addressing claims related to secret administration of LSD to Army sergeant in 1958); *United States v. Brandt*, 2 Nuremberg Trials (1949) (military tribunal for war crimes and crimes against humanity committed by *German Nazis* engaged in human experimentation during WWII). These cases are entirely irrelevant to DoD's actions in 2020 and 2021 in allegedly directing manufacturing and distribution of COVID-19 vaccines in the wake of a pandemic—vaccines authorized by the FDA, recommended by the CDC, and offered to the public on a voluntary basis. *See* Mot. At 14-15.

Plaintiff's citations to language in these cases regarding informed consent are also inapposite. *See* Opp'n at 25-26. Plaintiff does not allege that Mr. Watts was forced by DoD (or any other entity) to receive the vaccine. *See* Compl. ¶ 44 (indicating that the community college Mr. Watts attended "mandated the COVID-19 vaccine for all students *who wanted to* attend classes in person *rather than remotely*" (emphasis added)); *compare Doe # 1*, 297 F. Supp. 2d at 123 (enjoining *mandatory* anthrax vaccinations where vaccine was "unapproved for its intended use"); *Stanley*, 483 U.S. at 671 (finding non-justiciable tort claim related to *undisclosed* administration of LSD to servicemember). Nor can Plaintiff establish that Mr. Watts was uninformed of the risks. To the extent there was a distinction between the EUA vaccine and BLA vaccine, the complaint indicates that Mr. Watts understood so, and thus Plaintiff cannot claim that DoD's statements caused him any confusion about the EUA vaccine's FDA-authorized status. Mr. Watts allegedly "waited until Comirnaty . . . was [BLA] licensed by the FDA before he would receive a COVID-19 vaccination," and when Comirnaty was unavailable at the time of his vaccination, Mr. Watts

7

accepted the EUA vaccine. Compl. ¶¶ 46, 48. Plaintiff's sole argument regarding Mr. Watts's knowledge is to contest that Mr. Watts received the "Fact Sheet for Recipients and Caregivers" ("Fact Sheet") that included "information about myocarditis and pericarditis," because the relevant FDA language, *see* Compl. Ex. 6 at 2 n.6, suggests that that Fact Sheet was for foreign, not domestic, vaccine administrations. Opp'n at 14. This is false. When read in context, that FDA statement makes clear that in the June 25, 2021 reissuance of the EUA vaccine's authorization, (1) "FDA clarified terms and conditions that relate to export of Pfizer-BioNTech COVID-19 Vaccine from the United States," and, separately, (2) "The Fact Sheet for Recipients and Caregivers was updated to include information about myocarditis and pericarditis following administration of the Pfizer-BioNTech COVID-19 Vaccine." Compl. Ex. 6 at 1-2 & n.6.[3] Plaintiff's complaint does not contain any allegation to the contrary.

In short, Plaintiff proffers only conclusory allegations and speculation about DoD's motivations for encouraging vaccinations. Plaintiff cannot establish with requisite particularity, or even plausibility, that DoD acted with an intentionally wrongful purpose, or that its alleged acts proximately caused Mr. Watts's harm. *See* 42 U.S.C. § 247d-6d(e)(3) (requiring "willful misconduct" be pleaded with particularity); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring under lesser plausibility pleading standard that factual allegations "raise a right to relief

---

[3] The full text of that footnote reads: "In the June 25, 2021 revision, FDA clarified terms and conditions that relate to export of Pfizer-BioNTech COVID-19 Vaccine from the United States. In addition, the Fact Sheet for Healthcare Providers Administering Vaccine (Vaccination Providers) was revised to include a Warning about myocarditis and pericarditis following administration of the Pfizer-BioNTech COVID-19 Vaccine. The Fact Sheet for Recipients and Caregivers was updated to include information about myocarditis and pericarditis following administration of the Pfizer-BioNTech COVID-19 Vaccine." Ex. 6. at 2 n.6.

above the speculative level" (citation omitted)). Plaintiff's claim for "willful misconduct" should be dismissed.

*Second*, Plaintiff repeatedly claims that DoD "never cared about the distinction between BLA and EUA" vaccines. Opp'n at 20. Plaintiff pleads no facts supporting that DoD intentionally blurred the line between the EUA and BLA vaccines to confuse the public into misbelieving that the EUA vaccine was safe and effective. *See Twombly*, 550 U.S. at 555 n.3 (complaint must include "factual allegation[s]" to "satisfy the requirement of providing . . . 'grounds' on which the claim rests"). Nor can Plaintiff establish that the lack of a distinction was knowingly factually or legally unjustified. As described in Defendant's opening brief, DoD's actions and representations were consistent with FDA statements and CDC recommendations. Specifically:

- The data reviewed in connection with the FDA's December 2019 EUA authorization established that "the vaccine was 95% effective" and "did not identify specific safety concerns that would preclude issuance of an EUA." Compl. Ex. 6 at 3.

- The CDC's Advisory Committee on Immunization Practices determined on June 23, 2021, that, "after reviewing available evidence including that for risks of myocarditis, . . . the benefits of using mRNA COVID-19 vaccines under the FDA's EUA clearly outweigh the risks in all populations," and, as a result, the CDC continued to recommend the COVID-19 vaccination "for all persons aged ≥12 years under the FDA's EUA."[4]

- The FDA granted BLA approval to Comirnaty and stated on August 23, 2021—mere days before Mr. Watts allegedly received a vaccine, Compl. ¶ 48—that Comirnaty was "the same formulation" as the EUA vaccine and the two could be used "interchangeably . . . without presenting any safety or effectiveness concerns." Compl. Ex. 6 at 2 n.8.

---

[4] Gargano et al., *Use of mRNA COVID-19 Vaccine After Reports of Myocarditis Among Vaccine Recipients: Update from the Advisory Committee on Immunization Practices — United States, June 2021*, 70 Morbidity & Mortality Wkly. Rep. 977, 979 (July 9, 2021), https://perma.cc/49YJ-2UAH. The Morbidity and Mortality Weekly Report is a CDC publication and may appropriately be considered as a matter of judicial notice. *See Bega v. Jaddou*, No. 22-02171 (BAH), 2022 WL 17403123, at *3 (D.D.C. Dec. 2, 2022), *aff'd sub nom.*, *Da Costa v. Immigr. Inv. Program Off.*, No. 22-5313, 2023 WL 5313526 (D.C. Cir. Aug. 18, 2023).

9

Plaintiff's opposition contests only the final point, relying on *Doe v. Austin*, 572 F. Supp. 3d 1224 (N.D. Fla. Nov. 12, 2021), to argue that the BLA and EUA vaccines are legally distinct products. Opp'n at 13. At issue in *Doe*, which challenged the military's COVID-19 vaccination requirement, was a provision of federal law requiring that recipients of EUA drugs be "informed . . . of the option to accept or refuse administration of the product"—a requirement that can only be waived as to members of the military if the President issues a waiver under 10 U.S.C. § 1107a(a)(1). *Doe*, 572 F. Supp. 3d at 1232 (quoting 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III)). The *Doe* court acknowledged that the EUA and BLA vaccines' "chemical formulation is identical" and credited "the FDA's conclusion that the two vaccines are medically interchangeable" as a "factual, medical claim." *Id.* at 1230 n.5, 1234 n.9, 1237.  Nevertheless, it recognized "that does not mean the two vaccines are *legally* indistinguishable," *id.* at 1230 n.5, such that certain EUA vaccines "could fall outside § 1107a's prohibition on mandatory administration" of EUA drugs absent Presidential approval, *id.* at 1234. While the EUA/BLA legal distinction may have been relevant to a claim under § 1107a, that legal distinction and that statutory provision are not relevant here because Mr. Watts was not a member of the military and he voluntarily received the COVID-19 vaccine.

In fact, *Doe* supports that Plaintiff cannot plead "willful misconduct," because, in this case, it is the "factual, medical claim," *id.* at 1237, that matters. The complaint hinges on there being a difference in safety between the EUA and BLA vaccines, such that DoD's alleged representations that the EUA vaccine was safe and effective were false and its alleged exclusive distribution of the EUA vaccine instead of the BLA vaccine caused harm. While Comirnaty's BLA approval does not automatically "retroactively license the EUA vaccine," *id.*; *see* Opp'n at 13, by Plaintiff's own account it established that Comirnaty was "safe and effective," Compl. ¶ 47. And if Comirnaty

10

was undisputedly safe and effective (as alleged by Plaintiff), then DoD's alleged acts were consistent with FDA's findings that the "chemical formulation is identical," *Doe*, 572 F. Supp. at 1234 n.9, and FDA's statement that the two vaccines could be used "interchangeably . . . without presenting any safety or effectiveness concerns," Compl. Ex. 6 at 2 n.8. Plaintiff does not explain why the *legal* distinction recognized in *Doe* between the BLA and EUA vaccines is relevant to its "willful misconduct" claim, or provide any support for its un-pleaded assertion that "there is a probability that the difference in the products raises safety concerns," Opp'n at 19.[5] As such, Plaintiff fails to establish that DoD's alleged statements that the EUA vaccine was safe and effective were knowingly false or that Mr. Watt's alleged receipt of the EUA vaccine instead of the Comirnaty vaccine proximately caused his harm.

At bottom, Plaintiff asks this Court to find that DoD's failure to use certain hyper-technical language in allegedly advising the public about COVID-19 vaccines during the height of the pandemic constitutes "willful misconduct." In Plaintiff's view, DoD should never have said the EUA vaccines were "safe and effective"—even if they were—because such a formal finding by FDA is only required for BLA approval, not EUA authorization. *See* Opp'n at 19. But none of the alleged DoD statements even mentions the EUA vaccines' FDA status, let alone suggests that the

---

[5] Plaintiff's citation to *United States v. Generix Drug Corp.*, 460 U.S. 453 (1983) is therefore misplaced. *See* Opp'n at 13. As the *Doe* court explained, the Supreme Court in *Generix* recognized that "two products with the same active ingredients" were "not the same 'drug'" under the Federal Food, Drug and Cosmetic Act where "their different excipients [*i.e.* inactive ingredients] created a reasonable possibility that the unlicensed drug was 'less safe and effective' than the licensed one." *Doe*, 572 F. Supp. 3d at 1224 n.5 (quoting *Generix*, 460 U.S. at 454-57). But *Generix* "declined to decide 'whether two demonstrably bioequivalent products, containing the same ingredients but different excipients, might under some circumstances be the same 'drug.'" *Id.* (quoting *Generix*, 460 U.S. at 461). Applying this to the EUA and BLA vaccines, the *Doe* court found that the plaintiffs did not show a "reasonable possibility" that the EUA vaccine was "any 'less safe and effective' than Comirnaty." *Id.* (quoting *Generix*, 460 U.S. at 455). Plaintiff here similarly pleads no facts to support such a showing.

FDA granted BLA approval to the EUA vaccine. *See* Compl. ¶¶ 32-38. Rather, DoD generally represented that the COVID-19 vaccines were "safe and effective." *Id.* Whatever the EUA vaccine's technical FDA status, Plaintiff cannot plausibly plead (let alone plead with particularity) that that representation was legally or factually unjustified. It was consistent with the data considered by FDA in granting the EUA, FDA's statements regarding the BLA and EUA vaccines being interchangeable for providing the vaccination series, and the CDC's recommendations after specifically considering risks of myocarditis and pericarditis.[6]

For the same reason, Plaintiff fails to allege that DoD acted wrongfully or in disregard of a known or obvious risk. Plaintiff points to no facts establishing that DoD did, or had reason to, doubt the medical expertise and determinations made by these agencies at the time of its alleged acts. *See Lloyd v. Sch. Bd. Of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1185 (S.D. Fl. 2021) (dismissing for failure to state a claim in part because "the Court cannot find that Defendants are

---

[6] Plaintiff claims that "Defendant's Motion must be denied or else converted to a motion for summary judgment because Defendant departed from the allegations contained in the Complaint" and "unilaterally offers disputed science regarding COVID-19 vaccine safety." Opp'n at 14. Not so. Defendant's opposition chiefly relies on documents appended to and incorporated by reference in Plaintiff's own complaint. *See In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 54-55 (D.D.C. 2016) (Courts "may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)). To the extent Defendant cites other documents, they are properly the subject of judicial notice as information provided on public websites of government agencies at the relevant time. *See Bega*, 2022 WL 17403123, at *3.

Nor is there any dispute of fact here. Defendant does not dispute that the BLA and EUA vaccines are *legally* distinct, as FDA itself stated, Compl. Ex. 6 at 2 n.8. And even if there was some unspecified "disputed science regarding COVID-19 vaccine safety," Opp'n at 14, the Court need not resolve such a dispute to adjudicate this motion. The operative question is whether, based on the information available to DoD, its statements and alleged actions regarding the EUA vaccine were knowingly made without justification. Given FDA's statements and CDC's recommendations at the time, they clearly were not.

irrational for following the recommendations of the CDC"); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1078 (D. Haw. 2021) (dismissing for failure to state a claim because "it is clearly reasonable for state and local officials to follow the CDC's guidance").

Mr. Watts's untimely death is tragic. To the extent it was caused by a COVID-19 vaccine, as Plaintiff alleges, his surviving family may seek compensation via the Countermeasures Injury Compensation Program, Compl. Ex. 3 at 1-2. Indeed, their claim is currently pending. Compl. ¶¶ 14-16. But a suit under the PREP Act against DoD is not the appropriate vehicle for adjudicating Plaintiff's claim. There has been no waiver of sovereign immunity, and the facts alleged do not and cannot establish that DoD engaged in "willful misconduct." Therefore, the complaint must be dismissed.

## CONCLUSION

For the reasons stated herein and in Defendant's Memorandum in Support of Motion to Dismiss and pursuant to Federal Rules 12(b)(1) and 12(b)(6), the complaint should be dismissed with prejudice.

Dated: September 22, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

TERRY M. HENRY
Assistant Branch Director

*/s/ Laura B. Bakst*
ZACHARY A. AVALLONE
  (D.C. Bar No. 1023361)
LAURA B. BAKST
  (D.C. Bar No. 1782054)
Trial Attorneys
United States Department of Justice

13

                    Civil Division, Federal Programs Branch
                    1100 L Street, N.W.
                    Washington, DC 20005
                    Tel: (202) 514-3183
                    Email: Laura.b.bakst@usdoj.gov

*Counsel for Defendant*